UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-221 WMW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEREMY RICHARD LUNDIN,

    Defendant.

INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

## COUNT 1
### (Mail Fraud)

1. On or about May 7, 2016, in the State and District of Minnesota, the defendant,

**JEREMY RICHARD LUNDIN**

having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, caused to be sent, delivered, and moved by the United States Postal Service various mailings, items, and things for the purpose of executing and attempting to execute such scheme and artifice to defraud.

### Manner and Means of the Scheme

2. From approximately December 2014 until May 2017, Lundin claimed that he conducted "options trading" through his business Big Island Capital. During that time he worked through a network of associates and friends to solicit investors to invest with

SCANNED
SEP 01 2017
U.S. DISTRICT COURT MPLS

Big Island Capital by promising them exponential growth through options trading. At least 51 individuals invested with Big Island Capital, providing Lundin with more than $1,039,000 based upon his promise that he was using the funds for options trading. In reality, Lundin was spending investors' money to fund his and his wife's lavish lifestyle and he was not trading options or otherwise investing the funds.

3. It was part of the scheme that Lundin provided victim-investors with written information about his investment strategy, to include the following statement:

> *"Our investment strategy is consisted of only options trading. This isn't the buy low, sell high, keep the stock for a long time strategy that the majority of investors participate in. Options trading consists of buying or selling contracts of an underlying company's stock instead of the stock itself. This means your money goes further and your investments grows exponentially. With this strategy, there is risk. There is a chance that the price of the stock goes the opposite way, but your investment is protected with stop losses."*

4. It was further part of the scheme that Lundin informed investors, through materials he provided in a "Welcome Packet," that the goal of Big Island Capital was to "generate profits with options trading" and that while he could not "guarantee" an exact percent, he would "shoot for between 40%-80% returns." Through these materials, Lundin also claimed that Big Island Capital investments earned a 67 percent rate of return in 2013 and a 97.8 percent rate of return in 2014.

5.   It was also part of the scheme to defraud that Lundin entered into a contract with victim-investors entitled, "Big Island Capital Investment Advisory Agreement," which stated that the assets of Big Island's account would be held for safekeeping by Interactive Brokers, LLC. Lundin regularly represented that the value of Big Island's account was several hundred thousand dollars. For example, "Welcome Packet" materials Lundin sent to a new victim-investor on November 24, 2015, stated that the firm's capital was $730,000 as of that date. In reality, Lundin didn't even open his account at Interactive Brokers until December 21, 2015. Below is a chart reflecting the activity in the Big Island Capital Interactive Broker account:

| Date | Deposit | Withdrawal |
|---|---|---|
| 12/23/15 | $10,000.00 | |
| 02/05/16 | $20,000.00 | |
| 02/23/16 | | $10,000.00 |
| 03/04/16 | | $9,000.00 |
| 04/29/16 | | $8,000.00 |
| 05/03/16 | | $2,300.00 |
| | | |
| **Total** | **$30,000.00** | **$29,300.00** |

6.   On July 5, 2016, the Big Island Capital Interactive Brokers account was closed.

7.   It was also part of the scheme that in order to appear legitimate and promote his scheme, Lundin created phony account statements purporting to show the percentage of growth that investors were experiencing each quarter. Lundin provided victim-investors with online access to their quarterly statements, as well as purportedly "up to date" information about their rate of growth and the market value of their account on a daily

3

basis, via a web-based service using the domain "bigisland.capital." Victim-investors' online account information and quarterly statements commonly showed double-digit gains on both a weekly and quarterly basis. For example, I.W. invested $20,000 on November 15, 2015. On March 31, 2016, I.W. received an "Investment Account Statement" showing the gains for the first quarter of 2016 and the value of his/her account as of that date. The statement showed that the first quarter gains for 2016 were 30.5 percent since the last statement on December 31, 2015, and that I.W.'s account balance had grown to $33,330 (a 65 percent increase in just over four months).

8.   It was also part of the scheme to defraud that Lundin directed his victim-investors to make their checks payable to "Big Island Capital" and he deposited those checks into a Wells Fargo bank account he had established in the company's name (the "Big Island Business Account"). Between May 2015 and May 2017, at least $992,000 was deposited into that account from investors. However during roughly the same time period (between June 2015 and May 2017), Lundin transferred $933,950 from the Big Island Business Account directly into his and his wife's personal checking account at Wells Fargo. Lundin and his wife then used the majority of those funds on their personal expenses including travel, luxury automobiles, and retail purchases. For example, among other expenditures, records from Jeremy and Alex Lundin's personal checking account show:

    a. Between February 2016 and April 2017, payments to American Express totaling $366,171.07;

b. Two cancelled checks dated May 22, 2015, and July 6, 2015, payable to Monique of Switzerland Jewelers totaling $18,255.00;

c. Between August 2015 and April 2017, electronic transfers to Nordstrom department store totaling $40,551.41; and

d. A check payable to Morrie's Luxury Auto in the amount of $71,118.93 dated January 26, 2016.

9. In furtherance of the scheme to defraud, Lundin instructed victim-investor V.L., who resides in Grand Forks, North Dakota, to mail a check to Lundin in order to start an investment account. On May 7, 2017, V.L. sent a check in the amount of $20,000, made payable to Big Island Capital, to Lundin at his residence in Mound, Minnesota, via the United States Postal Service.

10. All in violation of Title 18, United States Code, Section 1341.

## COUNT 2
### (Money Laundering – Transaction Involving Fraud Proceeds)

11. The allegations contained in paragraphs 2 through 8 of this Information are re-alleged as if stated in full herein.

12. On or about January 26, 2016, in the State and District of Minnesota, the defendant,

**JEREMY RICHARD LUNDIN**

knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, namely the negotiation of a check drawn from his

and his wife's Wells Fargo checking account in the amount of $71,118.93, paid to Morrie's Luxury Auto to purchase a 2014 Maserati Ghibli, such property having been derived from specified unlawful activities, that is, mail fraud in violation of Title 18, United States Code, Section 1341.

13. All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

14. Counts 1 and 2 of this Information are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

15. As the result of the offenses alleged in Count 1 of this Information, defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

16. As the result of the offenses alleged in Count 2 of this Information, defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 98 2(a)(1) any property, real or personal, involved in such offenses, or any property traceable to such property.

17. The property to be forfeited pursuant to paragraph 15 includes, but is not limited to, the following:

    a. 2016 Sea-Doo GTI SE 155 – S/N YDV26857L516;

b. 2016 Triton Trailer ELWCII-8875 – S/N 4TCSM1126GH243166;

c. Funds in the amount of $316.13 seized from Wells Fargo account 3724809524;

d. Platinum and diamond women's wedding ring worn by Alex Lundin;

e. Platinum and 14-karat yellow gold men's wedding ring worn by Jeremy Lundin;

f. Stadium Builders License, Account 2235699, pertaining to the following seats at U.S. Bank Stadium: Section 132, Row 19, seats 16 and 17;

g. Season tickets to the Minnesota Vikings for the 2017 season for the following seats at U.S. Bank Stadium: Section 132, Row 19, seats 16 and 17;

h. The real property located at 5953 Gumwood Road, Mound, Minnesota; and

i. A 31'8" fiberglass watercraft identified by vessel hull number RGMVC121F708 and official number 1221843.

18. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and by Title 18, United States Code, Section 982(b)(1).

Respectfully submitted,

Dated: September 1, 2017

GREGORY G. BROOKER
Acting United States Attorney

BY: AMBER M. BRENNAN
Assistant U.S. Attorney
Attorney ID No. 0285961