UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| United States of America, | Case No. 17-cr-0221 (WMW) |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE** |
| Jeremy Richard Lundin, | |
| Defendant. | |

---

This matter is before the Court on Defendant Jeremy Richard Lundin's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Dkt. 53.) Plaintiff United States of America opposes the motion. For the reasons addressed below, the motion is denied.

## BACKGROUND

Lundin pleaded guilty on September 21, 2017, to one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of money laundering, in violation of 18 U.S.C. § 1957. Lundin's convictions arise from his scheme to defraud more than 50 individuals who invested with his company, Big Island Capital, from approximately December 2014 to May 2017. As part of his plea agreement with the United States, Lundin waived his right to appeal his sentence "unless the sentence exceeds 87 months' imprisonment."

The Court held a sentencing hearing on February 21, 2018. Lundin and his attorney, Joseph S. Friedberg, were present at the sentencing hearing. At the beginning of the sentencing hearing, the following exchange occurred:

> THE COURT: Mr. Friedberg, have you and Mr. Lundin received a copy of the PSR and addendum?
>
> MR. FRIEDBERG: We have, Your Honor.
>
> THE COURT: Have you read them and discussed those documents?
>
> MR. FRIEDBERG: Yes.

Thereafter, both parties confirmed that there were no objections to the presentence investigation report and that neither party objected to the Court's guidelines calculations, which resulted in a guidelines imprisonment range of 92 to 115 months. After defense counsel presented argument in favor of both a downward departure and a downward variance, the Court gave Lundin an opportunity to speak on his own behalf. Lundin responded: "Your Honor, I believe my lawyer has said everything that I would say."

The Court sentenced Lundin to 110 months' imprisonment as to each count, to run concurrently. The Court subsequently advised Lundin of his right to appeal and the deadline to do so. Lundin did not appeal his conviction or sentence.

On February 19, 2019, Lundin filed the pending motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that he was denied the effective assistance of counsel before, during, and after sentencing, in violation of the Sixth Amendment to the United States Constitution. Lundin alleges that Friedberg was deficient when he (1) failed to file a notice of appeal, (2) withdrew Lundin's objection to the sophisticated-means enhancement without Lundin's knowledge or consent, (3) failed to provide Lundin a copy of the presentence investigation report or review it with Lundin before sentencing, (4) assured Lundin that he would be designated to a minimum-security camp, and

(5) otherwise performed deficiently in connection with the sentencing proceedings. The Court held an evidentiary hearing on January 8, 2020, that was "strictly limited to the issue of whether Lundin instructed his attorney to file an appeal." At that hearing, Lundin testified and called three other witnesses to testify: Friedberg, Lundin's grandfather, and Lundin's father. Each witness testified consistently with the affidavits submitted prior to the evidentiary hearing.

## ANALYSIS

A federal prisoner may move to vacate his or her sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a); *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987). "Relief is reserved for violations of constitutional rights and for a narrow range of injuries which, if untreated, would result in a miscarriage of justice." *United States v. Boedigheimer*, 295 F. Supp. 3d 912, 920 (D. Minn. 2018) (citing *Poor Thunder*, 810 F.2d at 821–22).

In his Section 2255 motion, Lundin alleges several claims of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A criminal defendant is constitutionally entitled to the *effective* assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). A claim of ineffective assistance of counsel may be brought in a collateral proceeding under Section 2255 even if the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. A defendant challenging the reasonableness of defense counsel's conduct must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. The Court addresses in turn each asserted basis for Lundin's claim of ineffective assistance of counsel.

## I. Failure to File an Appeal

Lundin first argues that his counsel was ineffective because he failed to file an appeal. When "a defendant has *expressly requested* an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019) (emphasis added); *accord Witthar v. United States*, 793 F.3d 920, 922 (8th Cir. 2015) ("An attorney's failure to file a *requested* appeal automatically satisfies the deficient-performance prong of *Strickland* because it is professionally unreasonable." (emphasis added) (internal quotation marks omitted)). Accordingly, if the evidence shows that a defendant "asked counsel to appeal and counsel refused," the defendant is entitled to relief under Section 2255. *Witthar*, 793 F.3d at 923. Here, it is undisputed

that no appeal was filed. But Lundin and his trial counsel dispute whether Lundin requested that his counsel file an appeal.

"When a district court receives conflicting statements—one from a § 2255 petitioner and one from [petitioner's] former counsel—the court cannot make a factual determination based on the relative credibility of these individuals without the benefit of an evidentiary hearing." *Id.* (internal quotation marks omitted). "If neither statement is facially incredible and both contain similar specificity regarding when the alleged appeal-request conversations took place (or did not take place)," a district court must conduct an evidentiary hearing to resolve this "factual dispute on a critical issue." *Id.* at 923, 924 (internal quotation marks omitted).

Here, in an affidavit accompanying his motion, Lundin attests to the following, in relevant part:

> I was sentenced to 110 months' imprisonment. Because my plea agreement specifically authorized me to appeal a sentence of 110 months' imprisonment (as it was beyond the 87-month appeal waiver contemplated in my plea petition), I wished to appeal my sentence, and assumed that Mr. Friedberg would be appealing my sentence.
>
> Prior to sentencing, I spoke with Mr. Friedberg and expressed interest in appealing my sentence. I sought to appeal the application of the 2-point enhancement for sophisticated means, and the application of certain other enhancements. I also sought to appeal because the sentence imposed was 23 months beyond the 87-month appeal waiver contained in my plea petition. Mr. Friedberg told me that it would be "a waste of money." Mr. Friedberg did not file a notice of appeal on my behalf. Because I had not ever received a retainer agreement, I did not know whether my original retainer included an appeal. Nevertheless, I had the financial means to appeal if the appeal was going to cost additional money.

5

In contrast to Lundin's account, Friedberg attests—in a declaration submitted by the United States—to the following, in relevant part:

> After the sentencing, Mr. Lundin asked me whether he could appeal his sentence. I understood him to be asking my advice about whether he had a right to appeal, and whether he should do so. I told him he could appeal, but that an appeal would be a complete waste of money. Mr. Lundin never asked me to file a notice of appeal for him, or to pursue an appeal on his behalf, or made any similar request.

Lundin's affidavit is vague as to the precise content of his alleged statements to Friedberg and the timing of those statements. Nothing in Lundin's affidavit clearly indicates that he expressly requested that an appeal be filed. Instead Lundin attests that he "wished" to file an appeal and "assumed" Friedberg would do it. But out of an abundance of caution, and because both Lundin's affidavit and Friedberg's declaration contain similar specificity and are *not* facially incredible, the Court held an evidentiary hearing on January 8, 2020, to resolve the factual dispute.

Defense counsel "has a constitutionally imposed duty to *consult with* the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (emphasis added). In *Flores-Ortega*, the Supreme Court of the United States described this duty as follows:

> We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and

> disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner *only by failing to follow the defendant's express instructions* with respect to an appeal.

*Id.* at 478 (emphasis added). When determining whether this duty to consult has been satisfied, courts consider all of the relevant circumstances, including the information defense counsel knew or should have known, whether the conviction follows a trial as opposed to a guilty plea, whether the defendant received the sentence bargained for as part of a plea agreement, and whether the plea agreement waived some or all appeal rights. *Id.* at 480. If "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult," defense counsel "might then reasonably decide" that the information need not be repeated. *Id.* at 479–80.

Here, the parties do not dispute that Lundin at least expressed an *interest* in appealing his sentence. Lundin attests in his affidavit that "[p]rior to sentencing, I spoke with Mr. Friedberg and expressed interest in appealing my sentence." Friedberg attests in his declaration that, "[a]fter the sentencing, Mr. Lundin asked me whether he could appeal his sentence." At the January 8, 2020 evidentiary hearing, both Lundin and Friedberg provided testimony that is consistent with the statements in their affidavits. Although the timing differs between Lundin's and Friedberg's accounts of what occurred, both agree that Lundin expressed an interest in appealing his sentence. And it is undisputed that Lundin did not waive his right to appeal a sentence of the length that the

Court imposed.[1]  In summary, it is undisputed that at some point either shortly before or immediately after Lundin was sentenced, Lundin expressed an *interest* in appealing.

Lundin's expression of interest in appealing his sentence triggered Friedberg's "constitutionally imposed duty to *consult with*" Lundin about an appeal.  *Id.* at 480 (emphasis added).  Friedberg told Lundin that he "could appeal" and, in response to Lundin's inquiry about appealing his sentence, Friedberg advised Lundin that it would be a "waste of money" or a "waste of time."  The Court also advised Lundin at the sentencing hearing about his right to appeal and the deadline to do so.  In light of the Court's instructions, Friedberg reasonably could have determined that he need not repeat the information that the Court had provided.  *Id.* at 479–80.  Friedberg testified that, because Lundin never expressed interest in appealing thereafter, Friedberg was left with the impression that Lundin had listened to Friedberg's advice and decided not to appeal. Indeed, Lundin's testimony at the evidentiary hearing corroborates Friedberg's impression that Lundin had accepted his advice not to appeal:

> Q. And is it fair to state, then, that **you relied upon Mr. Friedberg's statement to you about it's a waste of time and money** and not to talk to him about it further?
>
> A. **Yeah.** I thought, well, I don't know very much about the legal system and I hired him after two recommendations, actually, and knew he was a reputable attorney, **so when he said that, I just trusted his judgment**.

---

[1]  Although the guidelines range of imprisonment for Lundin was higher than the parties contemplated in their plea agreement, this discrepancy exists because Lundin's criminal history category was higher than the parties had anticipated.  The calculation of Lundin's criminal history category is not the basis for any of Lundin's arguments in support of his Section 2255 motion.

8

(Emphasis added.) On this record, Friedberg satisfied his duty to consult with Lundin. Although Lundin characterizes Friedberg's brief consultation as insufficient, Lundin does not identify any advantage or disadvantage of pursuing an appeal that Friedberg failed to convey to him or any advice, information, or clarification about Lundin's appeal rights that Friedberg failed to provide to Lundin.[2] Thus, Lundin's contention that Friedberg failed to consult with him about his appeal rights is unfounded.

Because Friedberg fulfilled his duty to consult with Lundin about appealing his sentence, Friedberg's subsequent performance is professionally unreasonable only if he failed to follow Lundin's express instruction to file an appeal. *Id.* at 478; *see also United States v. Keys*, 469 F. Supp. 2d 742, 750–51 (D. Minn. 2007) (denying postconviction relief under similar circumstances). According to Friedberg, after advising Lundin that an appeal would be a waste of money, "Lundin never asked me to file a notice of appeal for him, or to pursue an appeal on his behalf, or made any similar request."[3] Neither

---

[2] At the evidentiary hearing, Lundin testified that Friedberg never talked to him about the cost of an appeal or told him that his sentence could not get any worse if he appealed and lost. But Lundin does not argue or even suggest that either of these two factors was material to his decision about whether to appeal. To the contrary, Lundin insists that he wanted to appeal at the time of his sentencing and that he had the financial means to do so.

[3] Friedberg attests that he "would have filed a notice of appeal on [Lundin's] behalf if he had asked me to do so, or if he had indicated that he wanted me to do so, in order to preserve his appeal right," and that it is his practice to file an appeal when a client requests that he do so even if Friedberg does not intend to handle the appeal himself. Friedberg also testified that he would have filed an appeal if a member of Lundin's family had directed him to do so. Lundin, however, has not demonstrated that the express instructions of Lundin's *family* directing Friedberg to file an appeal have any legal relevance. In *Flores-Ortega*, the Supreme Court addressed an attorney's responsibilities only as to the *defendant's* express instructions. 528 U.S. at 478. But

Lundin's affidavit nor his testimony at the evidentiary hearing contradicts Friedberg's account. To the contrary, as addressed above, Lundin testified that he *relied* on Friedberg's advice and "trusted his judgment" that an appeal would be a waste of time or money. Lundin's testimony demonstrates that he accepted Friedberg's advice and decided not to appeal. Although Lundin argues that communicating with counsel while in custody can be difficult, Lundin's testimony confirms that he was able to make phone calls from the jail during the 14 days after his sentencing hearing—and that he did, in fact, make multiple calls to his family during that time period. But there is no evidence that Lundin even *attempted* to contact Friedberg during those 14 days. Even when accepting as true every aspect of Lundin's affidavit and his testimony, there is no basis to conclude that Lundin gave Friedberg any "express instructions with respect to an appeal" that Friedberg did not follow.[4] *Flores-Ortega*, 528 U.S. at 478. The record is undisputed that *no one* expressly instructed Friedberg to file an appeal of Lundin's sentence.

In summary, because Friedberg satisfied his duty to consult with Lundin about his appeal rights and there is no evidence that Lundin expressly instructed Friedberg to file

---

even if the instructions of a defendant's family triggered a duty to file an appeal, the record does not demonstrate that Friedberg received any express instructions to appeal from Lundin's family.

[4] Notably, the primary disparity between Lundin's account of what occurred and Friedberg's account of what occurred is the *timing* of the conversation in which Lundin asked whether he "could appeal." According to Lundin, this conversation occurred *before* his sentencing hearing. Even if the Court were to accept Lundin's account and reject Friedberg's account, Lundin's statement to Friedberg cannot be construed as even an *implied* instruction to appeal a sentence because a sentence had not yet been imposed. In fact, in Lundin's account, there is no evidence that Lundin even *expressed an interest* in appealing during the critical 14-day appeal period after he was sentenced.

an appeal, Lundin's arguments lack merit. Lundin's motion to vacate his sentence on this basis is denied.

## II. Withdrawal of Objection to Sophisticated-Means Enhancement

Lundin also argues that his counsel provided ineffective assistance by withdrawing Lundin's objection to the application of a sophisticated-means enhancement to Lundin's offense level.

In the parties' plea agreement, Lundin reserved the right to challenge the application of a 2-point enhancement under Section 2B1.1 of the United States Sentencing Guidelines for using sophisticated means as part of the offense. Lundin objected to the application of this enhancement in the preliminary presentence investigation report. But Lundin did not pursue this objection in his sentencing memorandum or at the sentencing hearing. In fact, Lundin's counsel expressly withdrew this objection in his sentencing memorandum, asserting that "such a challenge would be useless" based on the undisputed facts in the case.

"It is not ineffective assistance of counsel to withdraw objections that have no support in the law." *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009). And counsel's failure to object to a presentence investigation report is not ineffective assistance when the "decision not to object . . . was a well-reasoned, tactical decision." *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). An offense involves sophisticated means if it includes "especially complex or especially intricate offense conduct pertaining to the execution or concealment of [the] offense." U.S.S.G. § 2B1.1(b)(10) cmt. 9(B). For this enhancement to apply, "the government must show

that the offense conduct at issue was notably more complex or intricate than the garden-variety version of that offense." *United States v. Laws*, 819 F.3d 388, 393 (8th Cir. 2016). "Even if any single step is not complicated, repetitive and coordinated conduct can amount to a sophisticated scheme." *United States v. Sethi*, 702 F.3d 1076, 1079 (8th Cir. 2013) (internal quotation marks omitted).

Lundin's scheme lasted more than two years, involved multiple transactions, and defrauded more than 50 victims of approximately $1 million collectively. Lundin admitted that he used a variety of methods to advance his scheme. He created fake account numbers and fraudulent account documents, including detailed account statements and investment advisory agreements. He sent these fraudulent account documents to investors by FedEx in a "Welcome Packet" with instructions for the investor to sign and return certain documents to him. Lundin also created and operated a website where investors could view their purported account information online. And to make his scheme appear legitimate, Lundin directed his investors to make their checks payable to "Big Island Capital" and deposit them in a bank account that he established in his company's name. Based on these and other undisputed facts underlying Lundin's offense conduct, the Court observed at the sentencing hearing that Lundin "executed a long and complicated" fraud scheme.

In his declaration, Friedberg attests to the following, in relevant part:

> After learning more about the fraud scheme and reviewing some discovery, the Presentence Investigation Report, and the United States' Position on Sentencing, there was no question in my mind that the Court would find sophisticated means were used. So, prior to sentencing, I decided not to persist in

> my objection to the enhancement. I told Mr. Lundin that I was not going to continue with the objection, and he did not voice any concerns about my decision.
>
> For the last 50 years, in my career as a lawyer I have deliberately chosen not to make losing arguments for the sake of making them. I believe making arguments that are clearly not going to prevail diminishes my credibility with the court, and impairs my ability to obtain the best results for my clients. My strategy is to choose one or more arguments that I believe have a chance of success, and focus on those arguments.
>
> Given the nature of Mr. Lundin's conduct, my strategy throughout Mr. Lundin's case was for us to take swift and complete responsibility for his actions, and I felt that making a meritless argument about sophisticated means would inure to Mr. Lundin's detriment. Mr. Lundin was well aware of my strategy throughout the handling of his case. He knew what my approach was going to be, and he approved of it.

Friedberg's declaration is consistent with what occurred at the sentencing hearing. Indeed, after the Court confirmed that neither party had any objections to the presentence investigation report or the Court's guidelines calculations, Lundin had an opportunity to address the Court. He stated: "Your Honor, I believe my lawyer has said everything that I would say." The record demonstrates that Friedberg made a well-reasoned tactical decision not to object to the application of the sophisticated-means enhancement because such an objection had no legal support in light of the facts of the case.

For these reasons, Lundin's motion to vacate his sentence on this basis is denied.

### III. Failure to Provide Lundin with the Presentence Investigation Report

Lundin next argues that his counsel provided ineffective assistance by failing to show Lundin the presentence investigation report or review it with Lundin. In his March 2019 affidavit, Lundin attests:

> To-date I have never even seen a copy of my PSR. I do, however, recall one brief phone conversation with Mr. Friedberg, which occurred prior to my sentencing, in which Mr. Friedberg told me that the PSR had been completed. Mr. Friedberg told me, briefly, that, "It's not very good—we'll have to argue about a few things on it" or something similar to that language. Mr. Friedberg told me that he and I would talk in more detail about the PSR at a future date. Despite this, Mr. Friedberg and I never again communicated about the PSR, or any objections/clarifications to be made on the PSR.

In contrast, Friedberg asserts in his declaration:

> I recall having Mr. Lundin come to my office for a meeting at which I summarized his PSR for him, and I told him it was horrible. I don't recall whether he read the whole thing or not, but I reviewed it with him. That was when I told him I couldn't argue against sophisticated means, but that I would argue for overstated criminal history.

The Eighth Circuit has recognized that "[a] criminal defendant is not entitled to examine a presentence report to which his counsel has access." *United States v. Leath*, 711 F.2d 119, 120 n.1 (8th Cir. 1983) (quoting *Knight v. United States*, 611 F.2d 918, 923 (1st Cir. 1979)). After the Eighth Circuit decided *Leath*, however, the Federal Rules of Criminal Procedure were amended with respect to the disclosure of a presentence investigation report. Under Rule 32(e)(2), Fed. R. Crim. P., the probation officer must give the presentence report to defense counsel *and* the defendant. And under Rule

14

32(i)(1)(A), Fed. R. Crim. P., a sentencing court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." But when a defendant does not seek additional time to review a presentence report at the time of sentencing, the defendant waives any claim that he or she was not given adequate time to review the presentence report, absent a miscarriage of justice. *See United States v. Prado*, 204 F.3d 843, 845 (8th Cir. 2000).

It is undisputed that Friedberg received and had an opportunity to review the presentence report. Lundin concedes that he spoke to Friedberg about the presentence report, at least briefly. At the sentencing hearing, the following exchange occurred:

> THE COURT: Mr. Friedberg, have you and Mr. Lundin received a copy of the PSR and addendum?
>
> MR. FRIEDBERG: We have, Your Honor.
>
> THE COURT: Have you read them and discussed those documents?
>
> MR. FRIEDBERG: Yes.

Lundin did not contradict these representations at that time. To the contrary, when he was asked a short time later whether he had anything he would like to say on his own behalf, Lundin responded that Friedberg had "said everything that I would say." As such, Lundin waived any argument that he was not provided an opportunity to review the presentence report. *See, e.g.*, *Prado*, 204 F.3d at 845. Moreover, even if he had not waived this argument, Lundin has not identified any prejudice that resulted from Friedberg's alleged failure to provide the presentence report to him or to review it with him. Thus, any such error was harmless.

For these reasons, Lundin's motion to vacate his sentence on this basis is denied.

## IV. Assurance of a Minimum-Security Camp Designation

Lundin also argues that his counsel provided ineffective assistance by assuring Lundin that he would be designated to a minimum-security camp if he pleaded guilty.

To demonstrate the requisite "prejudice" necessary to withdraw a guilty plea based on ineffective assistance of counsel, a defendant must "show that there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial." *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114, 1140 (N.D. Iowa 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In his affidavit, Lundin asserts that Friedberg erroneously advised him that he would qualify for placement at a minimum-security camp and that "I pled guilty believing that I would be placed [in] a prison camp." Notably, however, Lundin does not attest that he would *not* have pleaded guilty had he known he was ineligible for a minimum-security camp. Nor does he suggest any basis for concluding that his eligibility for a minimum-security camp was material to the decision to plead guilty in this case. To the contrary, Lundin's placement eligibility would have been the same whether he pleaded guilty or went to trial. *See Hill*, 474 U.S. at 60 (concluding that petitioner failed to establish prejudice in similar circumstances). Thus, even if Friedberg's mistaken advice about Lundin's eligibility for a minimum-security placement were objectively unreasonable, Lundin has not demonstrated that he was prejudiced as a result.

For these reasons, Lundin's motion to vacate his sentence on this basis is denied.

## V. Miscellaneous Sentencing Deficiencies

Lundin also argues that his counsel provided ineffective assistance based on several other alleged sentencing deficiencies—namely, by filing a short and untimely sentencing memorandum, failing to investigate mitigating circumstances, and failing to advocate for voluntary surrender. Even if these alleged deficiencies were objectively unreasonable under *Strickland*, Lundin has not demonstrated that any of these alleged deficiencies prejudiced him.

With respect to the timeliness of Lundin's sentencing memorandum, the record reflects that the Court accepted and considered the memorandum notwithstanding any untimeliness. As to the length and substance of the sentencing memorandum, Lundin does not identify a material factual or legal argument that was either omitted from the sentencing memorandum or not otherwise addressed or considered by defense counsel or the Court at the sentencing hearing. Indeed, although Lundin argues that defense counsel failed to investigate or present mitigating evidence at the sentencing hearing, he does not identify with specificity what that evidence might include or how it would have materially impacted sentencing.

Finally, with respect to voluntary surrender, Lundin argues that Friedberg "conceded the voluntary surrender issue prior to sentencing" and that the Bureau of Prisons would have given Lundin a reduction in his security score had he been permitted to voluntarily surrender. The Court received and considered extensive argument from the parties as to voluntary surrender at the sentencing hearing as well as multiple exhibits demonstrating that Lundin engaged in misconduct while on supervised release pending

sentencing. This misconduct included, among other things, providing false information to the owner of a condominium about Lundin's income for the purpose of obtaining a lease and submitting a check to the condominium owner with insufficient funds to cover the down payment. In light of Lundin's fraudulent conduct while on supervised release, the United States argued that Lundin should be taken into custody immediately to protect the community. The Court agreed, denied Lundin's request to voluntarily surrender, and ordered him detained at the conclusion of the sentencing hearing. To be clear—Lundin was denied the opportunity to voluntarily surrender as a result of his own misconduct, not as a result of deficient performance by his attorney.

For these reasons, Lundin's motion to vacate his sentence on these bases is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jeremy Richard Lundin's motion to vacate his sentence pursuant to 28 U.S.C. § 2255, (Dkt. 53), is **DENIED**.


Dated: March 25, 2020                           s/Wilhelmina M. Wright
                                                Wilhelmina M. Wright
                                                United States District Judge